## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

Mark Atkins,

        Plaintiff,

        v.

AT&T Services, Inc.,

        Defendant.

Case No. 21-cv-4207

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Mark Akins worked as a premise technician for Defendant AT&T Services, Inc. for years until he injured his neck on the job. After his injury, Plaintiff worked for a few months before going on an extended disability leave. When he tried to return to work, Defendant told him he was no longer welcome. As a result, Plaintiff has sued Defendant under the Americans with Disabilities Act (ADA) for disability discrimination. [9]. Defendant has moved to dismiss Plaintiff's amended complaint. [11]. For the reasons explained below, this Court grants Defendant's motion and dismisses the amended complaint without prejudice.

### I.    Background

This Court accepts as true the following facts from the (operative) amended complaint [9]. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

In or about January 24, 2015, Defendant hired Plaintiff to the position of premise technician. [9] ¶ 7. In that position, Plaintiff installed internet, telephones,

and televisions in customer homes. *Id.* ¶ 8. On December 6, 2018, Plaintiff injured his neck while attempting to pull cables at a customer's home. *Id.* ¶ 12. He continued to work until February 2019, when he requested "to go on disability" due to his neck injury. *Id.* ¶¶ 13–14. Before granting Plaintiff's request, Defendant asked him to be examined by a physician. *Id.* ¶ 15. Plaintiff went to his physician on February 21, 2019; at that visit, his physician indicated that Plaintiff should not work because of his disability. *Id.* ¶ 17. Plaintiff advised Defendant of his physician's position. *Id.* ¶ 18.

After being on leave for nearly a year, in early January 2020, Defendant informed Plaintiff that he should return to work. *Id.* ¶ 19. On January 30, Plaintiff called his manager, Dell Richardson, to discuss Defendant's request that he return to work "even though he was still injured." *Id.* ¶ 20. Richardson indicated he could not speak at the time. *Id.* ¶ 21. Plaintiff again attempted to reach Richardson on January 31 but did not receive a return phone call. *Id.* On February 3, Plaintiff spoke to Richardson and advised him that Defendant asked that he return to work "even though he was still injured." *Id.* ¶ 23. Plaintiff asked Richardson whether he received any information from his physician regarding his restrictions, but Richardson did not say anything. *Id.* ¶¶ 24–25.

Plaintiff claims that he showed up for work on February 3 because he "did not want to lose his job." *Id.* ¶ 26. That day, he advised Richardson that he had not been cleared by his physician to return to work. *Id.* ¶ 27. Richardson then sent Plaintiff home and indicated he would contact Defendant's attendance department. *Id.* ¶ 28.

At some point thereafter, Richardson telephoned Plaintiff and told him to file a request for accommodations. *Id.* ¶ 29. Approximately two weeks later, Defendant's accommodations department called Plaintiff and informed him that Defendant would give him eight hours off a month and that he was scheduled to return to work on April 1, 2020. *Id.* ¶ 31.

On May 26, 2020, Plaintiff received a "return to work" letter from Defendant stating that he did not return to work on May 1 and that Richardson had attempted to call Plaintiff on May 13 and 15. *Id.* ¶ 33. According to Plaintiff, those statements "were entirely false." *Id.* ¶ 34. Plaintiff attempted to contact Richardson on June 1 and 2 and left messages on Richardson's office and cell phones stating that he could not return to work because he was in too much pain from his neck injury. *Id.* ¶ 36. Plaintiff then called his union representative, Heather Brown, on June 2 and told her what happened. *Id.* ¶ 37. Brown advised Plaintiff to stay home until he heard further. *Id.* ¶ 39. Plaintiff told her he was scheduled for surgery on June 23 and that the surgery "was not a guarantee to remedy his physical condition." *Id.* ¶ 41.

On July 2, 2020, Plaintiff received notification that he was going to receive a termination letter for job abandonment and that "he should show up on July 6 at 5:00 p.m. to show that he still wanted to hold onto his job." *Id.* ¶ 42. On July 6, Plaintiff showed up to work. *Id.* ¶ 44. At that time, Richardson said that Plaintiff was no longer welcome on the property, that Defendant had already sent him a job abandonment letter, and that "there was nothing they could do." *Id.* ¶ 45.

In his single-count amended complaint, Plaintiff claims that Defendant

discriminated against him based on his disability in violation of the ADA. *Id.* ¶¶ 1, 46. Defendant has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [11].

## II.    Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a claim, not the merits of the case. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). To survive a motion to dismiss under Rule 12(b)(6), the claim "must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion accepts the well-pleaded factual allegations as true and draws all permissible inferences in the pleading party's favor. *Degroot v. Client Servs., Inc.*, 977 F.3d 656, 659 (7th Cir. 2020). Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

## III.    Analysis

The ADA prohibits certain employers from "discriminat[ing] against a qualified individual on the basis of disability." *Pontinen v. U.S. Steel Corp.*, 26 F.4th 401, 405 (7th Cir. 2022) (alteration in original) (quoting 42 U.S.C. § 12112(a)); *see also*

*Lange v. City of Oconto*, 28 F.4th 825, 837 (7th Cir. 2022). To state a disability discrimination claim under the ADA, Plaintiff must plausibly allege that: (1) he is disabled; (2) he is a qualified individual under the ADA; and (3) his disability caused an adverse employment action. *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503–04 (7th Cir. 2017).

Defendant argues that Plaintiff fails to plausibly plead the second element of his ADA claim because the allegations establish that he was not a "qualified individual" within the meaning of the ADA. [12] at 4–6. This Court agrees. The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Conners v. Wilkie*, 984 F.3d 1255, 1261 (7th Cir. 2021) (quoting 42 U.S.C. § 12111(8)). The Seventh Circuit has limited the term "reasonable accommodation" to "those measures that will enable the employee to work." *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 479 (7th Cir. 2017). As such, "a brief period of leave to deal with a medical condition could be a reasonable accommodation in some circumstances." *Id.* at 481. But because a "medical leave spanning multiple months does not permit the employee to perform the essential functions of his job," an employee "who needs long-term medical leave *cannot* work and thus is not a 'qualified individual' under the ADA." *Id.* at 479, 481; *see also United States ex rel. Sibley v. Univ. of Chi. Med. Ctr.*, 486 F. Supp. 3d 1210, 1224 (N.D. Ill. 2020) (observing that the ADA "only protects disabled people who are able to work").

The amended complaint demonstrates that Plaintiff is not a qualified

individual. It alleges that Plaintiff injured his neck on the job on December 6, 2018. [9] ¶ 12. He continued working for a few months until he requested leave in February 2019 because his physician stated "he should . . . remain off work because of his disability." *Id.* ¶¶ 14, 16. A year later, on February 3, 2020, Plaintiff still "had not been cleared by his physician to return to work because he was still injured." *Id.* ¶¶ 26–27. In June 2020, fifteen months after he first left on disability leave, Plaintiff told Richardson that he still "could not return to work physically," and told Brown that even though he "was scheduled for surgery on June 23, 2020, . . . that surgery was not a guarantee to remedy his physical condition." *Id.* ¶¶ 35–36, 41. Plaintiff also alleges that when he showed up to work on July 6, 2020 after receiving his job abandonment letter, he did so "even though *he was unable to perform his job responsibilities* because of his disability." *Id.* ¶¶ 44, 46 (emphasis added). When he showed up, his direct supervisor told him he was no longer welcome. *Id.* ¶ 45.

In short, Plaintiff admits in his amended complaint that, from February 2019 to the date of his adverse job action on July 6, 2020, he was unable to perform his job responsibilities. These admissions that Plaintiff was unable "to work for multi-month period" removes him "from the class protected by the ADA." *Severson*, 872 F.3d at 481; *see also Byrne v. Avon Prod., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003) ("Inability to work for a multi-month period removes a person from the class protected by the ADA."); *Waggoner v. Olin Corp.*, 169 F.3d 481, 482 (7th Cir. 1999) ("The rather common-sense idea is that if one is not able to be at work, one cannot be a qualified individual."); *see also, e.g.*, *Knighten v. Advoc. Aurora Health, Inc.*, No. 19-CV-07913,

2021 WL 4282601, at *4 (N.D. Ill. Sept. 21, 2021) (dismissing an ADA claim where the plaintiff alleged a six-month absence from work up until her adverse job action because that amounted to an admission "that she was not able to perform the essential functions of the job"). Consequently, Plaintiff is not a qualified individual under the ADA according to his own allegations.

Plaintiff attempts to overcome dismissal by attaching an affidavit to his response brief, in which he states that when he showed up to work on July 6, 2020, he "was able to perform the essential functions of my job as a Premise Technician." [17-1] ¶ 5. This directly contradicts the allegations in his complaint. *See* [9] ¶ 46 (alleging that on July 6, 2020, he "was *unable* to perform his job responsibilities") (emphasis added). Whether "or not an individual meets the definition of a qualified individual with a disability is to be determined as of the time the employment decision was made." *Castaneda v. Bd. of Educ. of City of Chi.*, No. 16 C 10167, 2019 WL 12528941, at *1 (N.D. Ill. Aug. 26, 2019) (quoting *Bay v. Cassens Transp. Co.*, 212 F.3d 969, 974 (7th Cir. 2000)). Thus, if true, as the affidavit asserts, that Plaintiff was able to perform his job responsibilities on July 6, 2020, he would be considered a qualified individual under the ADA. *See, e.g.*, *U.S. Equal Emp. Opportunity Comm'n v. S & C Elec. Co.*, 303 F. Supp. 3d 687, 689 (N.D. Ill. 2018) (finding that a complaint adequately alleged that the plaintiff was a qualified individual, because although he had been on medical leave for almost twelve months, he was "ready, willing and able to return to his position without any accommodation *at the time of his termination*") (emphasis added); *Smajlovic v. Ann & Robert H. Lurie Children's Hosp. of Chi.*, No.

15-CV-01243, 2016 WL 3595734, at *4 (N.D. Ill. July 5, 2016) ("If the employment action occurred on October 6, 2008 [when the plaintiff received a medical release from his physician to return to work], it seems that [the plaintiff] was likely a qualified individual; if the relevant date is July 25, 2008, [the plaintiff] was apparently not able to return to work and thus was not qualified at that time.").

Plaintiff's affidavit does not, however, cure the amended complaint's deficiencies. It is a "basic principle" that a plaintiff cannot amend his complaint through his response to a motion to dismiss. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012). Plaintiff also fails to explain this discrepancy and does not request leave to amend his complaint to conform his complaint to these new facts. In any case, this Court cannot consider extrinsic evidence like Plaintiff's affidavit without converting Defendant's motion to dismiss into a motion for summary judgment—a procedure neither party has requested. Fed. R. Civ. P. 12(d); *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018). This Court thus disregards Plaintiff's affidavit for the purposes of this motion to dismiss. And because Plaintiff's allegations demonstrate that he was not a qualified individual at the time Defendant took an adverse action against him, this Court dismisses Plaintiff's amended complaint.

The dismissal is, however, without prejudice. Federal Rule of Civil Procedure 15(a)(2) instructs courts to freely given leave to amend "when justice so requires." This Court will grant Plaintiff leave to amend his complaint to correct the deficiencies outlined here, including to allege facts consistent with his affidavit, but cautions

Plaintiff and his counsel that he should only amend if he can do so consistent with their obligations under Federal Rule of Civil Procedure 11. In other words, Plaintiff must ensure that any amended complaint is made with full candor and in good faith; he should only amend if the statements in his affidavit are, in fact, true.

In light of the above, this Court declines Defendant's request to impose sanctions, costs, and fees against Plaintiff. [18] at 6–8. Defendant contends that Plaintiff and/or his counsel have violated their "duty of candor" to the Court by making misrepresentations in either his amended complaint or affidavit. *Id.* This Court possesses authority to sanction a party for making "misrepresentations to the Court" which "undermines its ability to ensure that matters before it proceed fairly and efficiently." *Mullen v. GLV, Inc.*, 334 F.R.D. 656, 666 (N.D. Ill. 2020), *reconsideration denied*, No. 18 C 1465, 2020 WL 5630454 (N.D. Ill. Sept. 20, 2020). This Court understands Defendant's frustrations and is similarly frustrated that Plaintiff has not only attempted to inject evidence into the case, but has done so in a way that calls into question the truthfulness of the allegations he made in his amended complaint. Nonetheless, this Court declines at this time to sanction or impose costs and fees on Plaintiff, giving Plaintiff the benefit of the doubt that he or his counsel made a mistake in pleading his amended complaint. Again, Plaintiff is reminded that future written submissions to this Court must be made in good faith and full candor.

## IV. Conclusion

For the reasons explained above, this Court grants Defendant's motion to

dismiss [11] and dismisses Plaintiff's amended complaint [9] without prejudice. Plaintiff is given leave to amend his complaint to the extent he can do so consistent with this opinion and his Rule 11 obligations. Plaintiff's amended complaint shall be filed by May 20, 2022. Failure to amend by May 20 will result in an automatic dismissal of this case with prejudice.

Dated: May 3, 2022

Entered:

Mary M. Rowland
United States District Judge